BRANDON KEITH JACKSON,

      Plaintiff,

      v.

ROBERT C. TANNER, ET AL.,

      Defendants.

Civil Action

No. 17-cv-13503

Section "S"(5)

## SECOND AMENDED COMPLAINT

Brandon Keith Jackson respectfully files this, his second amended complaint, and seeks monetary, declaratory, and injunctive relief for violations of his federal constitutional and civil rights.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this case under 28 U.S.C. § 1331 because it arises under federal law and under 28 U.S.C. § 1343 because it seeks to redress the deprivation of federal constitutional and civil rights.

2. This Court is the proper venue pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to this case occurred in the Eastern District of Louisiana.

## PARTIES

3. Plaintiff Brandon Jackson is a 37-year-old man currently in the custody of the Louisiana Department of Public Safety & Corrections (number 451010) and incarcerated at B.B. Rayburn Correctional Center.

4. Defendant Louisiana Department of Public Safety & Corrections (LA DPS&C) oversees all state-run corrections facilities in Louisiana.

5.      Defendant B.B. Rayburn Correctional Center (RCC) is a state-run corrections facility in Angie, Louisiana.

6.      Defendant Robert Tanner is RCC's former warden and formerly oversaw RCC's operations.  He was responsible for the health and safety of inmates at RCC and for the conditions of their confinement.

7.      Defendant Edwin "Dusty" Bickham is RCC's current warden and currently oversees RCC's operations.  He is responsible for the health and safety of inmates at RCC and for the conditions of their confinement.

8.      Defendant Robert Goings is or was an officer at RCC.

9.      Defendant Ronnie Spears is or was an officer at RCC.

10.     Defendant Major Darryl Mizell is or was an officer at RCC.

11.     Defendant Dr. Robert Cleveland is RCC's medical director and oversees RCC's medical care to inmates.

## FACTS

12.     B.B. Rayburn Correctional Center (RCC) is a corrections facility in Angie, Louisiana, run by the Louisiana Department of Public Safety & Corrections (LA DPS&C).

13.     Brandon Jackson is an inmate at RCC.

14.     Mr. Jackson suffers serious medical conditions including mental health conditions (anti-social disorder, bipolar disorder, depression, and anxiety), high blood pressure, herniated discs, a surgically repaired hernia, and, until recently, hepatitis.

15.     The following facts are taken from medical records produced by RCC,[1] records retained by Mr. Jackson, undersigned counsel's conversations with Mr. Jackson, and Mr. Jackson's prior counsel's notes.

**July 17, 2017 incident**

16.     On July 17, 2017, RCC transported Mr. Jackson to LSU Lallie Kemp Medical Center for a cystoscopy.

17.     In anticipation of the trip, RCC placed Mr. Jackson in a "strip cell," meaning, as the name suggests, an empty cell in which a strip search can be conducted.

18.     RCC officers indeed strip-searched Mr. Jackson both prior to the trip and again upon his return. That is, Mr. Jackson removed his clothes and RCC officers carefully visually inspected Mr. Jackson's body, including its cavities, for contraband.  Mr. Jackson did not have any contraband on or in his body.

19.     After his return strip-search, RCC officers left Mr. Jackson in the strip cell.  But now the strip cell was not empty: Someone had left a green spray can, labeled "Rainbow Jungle Formula Insect Repellent," inside the cell.

20.     As Mr. Jackson began studying the spray can, RCC officer Robert Goings approached the cell and said, "I left you a little present." Goings told Mr. Jackson: "If you want to save your mother's life, you'll have to swallow the insect repellent and kill yourself bitch."

21.     Mr. Jackson believed Goings.  Goings previously had tormented Mr. Jackson by reciting Mr. Jackson's mother's address. Goings knew that Mr. Jackson's mother was ill and that the prospect of her death upset Mr. Jackson.  He also knew that Mr. Jackson suffers mental health conditions that make him sensitive to such threats.  Mr. Jackson complained about Goings's antics,

---

[1] RCC purported to produce to Mr. Jackson's prior counsel medical records from 2007 to March 23, 2018.  Undersigned counsel believes that RCC only produced records from July 2017 to March 23, 2018 and did not produce any mental health records.

but Goings boasted that Mr. Jackson couldn't do anything to him because his step-father, RCC Major Darryl Mizell, oversaw RCC's investigations and protected him from discipline.

22.     On the day in question, Mr. Jackson did as Goings instructed.  Video produced by RCC shows Mr. Jackson, standing in a strip cell, screaming and spraying insect repellent into his mouth and onto his naked body.  RCC officers eventually responded, restrained Mr. Jackson, and escorted him to a nurse for evaluation.

23.     RCC preserved the spray can as evidence and "turned it over to Major Mizell in investigations."[2]

24.     RCC charged Mr. Jackson with aggravated disobedience, contraband, and self-mutilation.[3]  RCC found him guilty of all charges and sentenced him to "Imp. Cell Confinement for 12 Weeks."[4]

25.     Mr. Jackson objected to his sentence, arguing that Goings had given him the insect repellent to ingest.  RCC countered that a video showed Mr. Jackson carrying and dropping the spray can onto the cell's bed.

26.     The video to which RCC refers, however, shows no such thing.  Instead it shows RCC officer Michael Dillon escorting Mr. Jackson to his cell and conducting a strip search of Mr. Jackson's body and its cavities.  If Mr. Jackson had been carrying a spray can, Dillon certainly would have discovered it.

27.     The same camera that recorded the video to which RCC refers also would have recorded any comings and goings prior to the incident.  The video that RCC produced, however, suspiciously omits that time period.

---

[2] 2017-07-18 Disciplinary Report for incident dated 2017-07-17.
[3] 2017-07-18 Disciplinary Report for incident dated 2017-07-17.
[4] 2017-07-18 Disciplinary Report for incident dated 2017-07-17.

**July 24, 2017 incident**

28.    Following the July 17, 2017 incident, RCC placed Mr. Jackson on "suicide watch."

29.    On July 24, 2017, Mr. Jackson, still in a strip cell, requested a roll of toilet paper. RCC officer Ronnie Spears brought him a roll of toilet paper, but it had a razor blade tucked into it. Spears told Mr. Jackson: "You wanted to kill yourself bitch, well here is your chance."

30.    Mr. Jackson recently had obtained a body camera from another RCC officer. From within his cell, he turned on the body camera and recorded himself swallowing the razor blade.[5] After additional RCC officers arrived, he smashed the body camera on the ground and submitted to restraints.

31.    RCC preserved the body camera as evidence and "sent to Major Darryl Mizell in Investigations office."[6]

32.    RCC charged Mr. Jackson with defiance, aggravated disobedience, property destruction, self-mutilation, and theft.[7] RCC found him guilty of all but the theft charge and sentenced him to, among other things, "10 days isolation" and "4 weeks cell confinement."[8]

33.    Mr. Jackson objected to his sentence, arguing both that Spears had given him the razor blade to ingest and that he had purchased the body camera in question from an RCC officer for $250. RCC rejected both arguments, but its reasoning does not withstand scrutiny.

34.    RCC disputed that Spears swallowed a razor blade in the first place, presumably relying on a post-incident report that stated that "no razor blade [was] noted" on an x-ray. But that x-ray was not conclusive, and indeed subsequent medical records reflect that Mr. Jackson had "blood in stool."

---

[5] 2017-07-24 Disciplinary Report for incident dated 2017-07-24 ("Offender Jackson then appeared to swallow the razor blade while filming it with the body camera.").

[6] 2017-07-24 Disciplinary Report for incident dated 2017-07-24.

[7] 2017-07-24 Disciplinary Report for incident dated 2017-07-24.

[8] 2017-07-24 Disciplinary Report for incident dated 2017-07-24.

Furthermore, everyone saw the razor blade. If Mr. Jackson had not swallowed it, certainly RCC would have obtained it and preserved it as evidence. RCC did not.

35.     RCC asserted that Mr. Jackson had not obtained the body camera from an RCC officer but instead had stolen the body camera from an empty room. But RCC itself acquitted Mr. Jackson of theft.[9] If RCC actually believed that Mr. Jackson stole the body camera from an empty room (unlikely, given Mr. Jackson's confinement), RCC would not have acquitted him.

36.     RCC contended that the body camera did not record the incident in question, but the body camera apparently worked because RCC managed to obtain from it other recordings that Mr. Jackson made.

37.     Notwithstanding everyone's agreement on the date in question that Mr. Jackson had swallowed a razor blade, the nurse who examined Mr. Jackson did not recommend that he see a doctor and instead instructed Mr. Jackson to simply wait to pass it. Mr. Jackson suffered pain and rectal bleeding for months before receiving appropriate medical attention.

**Pleas for mental health treatment**

38.     As the preceding month's incidents evidenced, Mr. Jackson's mental state was already fragile when, on September 7, 2017, his mother died.

39.     Between the July 24, 2017 incident and his mother's passing on September 7, 2017, Mr. Jackson made at least five formal requests to speak to a mental health professional.

40.     After his mother's passing on September 7, 2017, Mr. Jackson's pleas became more urgent. Between September 7, 2017 and March 5, 2018, he made more than a dozen formal requests to speak to a mental health professional, including in a personal letter to Dr. Robert Cleveland, RCC's

---

[9] 2017-07-24 Disciplinary Report for incident dated 2017-07-24 (on the disciplinary report signed by RCC's disciplinary board, both "Theft" and Rule Number "22" are stricken).

medical doctor.  Chief among Mr. Jackson's concerns was RCC's decision to cease administering to him Wellbutrin, an anti-depressant on which he depended for years.

41.     Medical records produced by RCC suggest that, notwithstanding the recommendation of RCC's mental health professional, Dr. Cleveland withheld Wellbutrin from Mr. Jackson as punishment for Mr. Jackson's behavior.  In a letter to Dr. Cleveland, Mr. Jackson begged for his medication and reminded Dr. Cleveland that he had promised he could have it if he did not "receive a write-up":

> Last time I seen you I let you read the paperwork mental health sent me saying she will leave it up to you to re-order my Wellbutrin.  You told me if I keep taking all my med's and do not receive a write-up, next time I come see you you will re-order my Wellbutrin. … I really need that medication sir, Doctor Cleveland[.] My mother died on me 2 months ago, and it's hard to deal with without that one medication. Doctor Cleveland you had reviewed my file last time and seen that I took my Wellbutrin 22 months without ain't problems, you said that was the only reason why you was going to re-order it for me. Doctor Cleveland I swear to God if you fix my medications or add these med's, I will not need to see you any more as long as I'm here I swear, and I will not get into any trouble sir … I really need my Wellbutrin sir.

42.     Dr. Cleveland had not restored Mr. Jackson's Wellbutrin as of March 19, 2018, the date of the most recent record in the medical records produced by RCC.

43.     As of this filing, Mr. Jackson contends Dr. Cleveland still has not restored his Wellbutrin.

**Retaliation**

44.     Mr. Jackson sought administrative review of the two disciplinary reports issued following the incidents of July 17, 2017 and July 24, 2017.  Both RCC and LA DPS&C denied his request for relief.

45.     Having exhausted his administrative remedies, on November 22, 2017, Mr. Jackson, pro se, filed in this Court a complaint alleging violations of his federal constitutional rights.  This Court appointed counsel to represent him.

46.     Since he filed his lawsuit, Mr. Jackson has been subjected to retaliation in the form of isolation, harassment, and excessive use of force.

47.     In a letter addressed to the Court's clerk, docketed on July 16, 2018, Mr. Jackson represented that he was "being confined to a cell for 23 hours and 50 minutes a day only being allowed to exit the cell for shower."

48.     On October 1, 2018, RCC officers Goings and Spears beat Mr. Jackson after he put a piece of paper in his mouth.  The beating was so bad Mr. Jackson had a black eye for days.

## CAUSES OF ACTION

### Under color state law

49.     At all times relevant to this complaint, Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983.

## COUNT 1

### Eighth Amendment
### Unreasonable conditions of confinement
### Goings, Spears, and Major Mizell, in their individual capacities
### Warden Bickham, in his official capacity

50.     Mr. Jackson re-alleges each of the foregoing paragraphs as though stated fully below.

51.     The Eighth Amendment to the United States Constitution protects inmates like Mr. Jackson from cruel and unusual punishment.  The prohibition on cruel and unusual punishment includes a prohibition on unreasonable conditions of confinement.

52.     Mr. Jackson suffers serious mental health conditions including anti-social disorder, bipolar disorder, depression, and anxiety.

53.     Goings knew that Mr. Jackson suffers serious mental health conditions, yet Goings relished in tormenting Mr. Jackson, including by threatening to kill his mother if he did not ingest insect repellent on July 17, 2017.  Goings knew that Mr. Jackson's serious mental health conditions

made him sensitive to Goings's threats, and that the threats caused Mr. Jackson severe mental and physical suffering.

54.    Spears knew that Mr. Jackson suffers serious mental health conditions, yet Spears relished in tormenting Mr. Jackson, including by giving him a razor blade and telling him to kill himself on July 24, 2017.  Spears knew that Mr. Jackson's serious mental health conditions made him sensitive to Spears's provocation, and that the provocation caused Mr. Jackson severe mental and physical suffering.

55.    The excessive risk to Mr. Jackson's health and safety was both objectively obvious and subjectively known by Goings and Spears.

56.    Goings and Spears did not merely deliberately disregard the excessive risk to Mr. Jackson's health and safety.  They did so maliciously, having no just cause, and sadistically, inflicting pain for their own amusement.

57.    The conditions of Mr. Jackson's confinement, which included Goings's and Spears's threats and provocations, posed an unreasonable risk of serious damage to Mr. Jackson's health and safety.  No contemporary standards of decency countenance the malicious and sadistic abuse of a mentally ill inmate.

58.    At all relevant times, Major Mizell oversaw investigations at RCC.  It was his responsibility to investigate the July 17, 2017 and July 24, 2017 incidents.  In both instances, he would have had notice of facts that contradicted RCC's version of events, but either he did not bother to investigate, or he investigated but concealed his findings.  Either way, he evinced deliberate or malicious indifference to the facts and provided cover for Goings and Spears that was a foreseeable contributing factor to the violations of Mr. Jackson's constitutional rights.

59.    Mr. Jackson suffered harm, including mental and emotional distress, as a result of Goings's, Spears's, and Major Mizell's actions.

60.     Goings, Spears, and Major Mizell are individually liable for monetary damages that will compensate Mr. Jackson for the harm, including mental and emotional distress, that he suffered.

61.     In addition, Mr. Jackson seeks declaratory and injunctive relief against Warden Bickham in the form of a court order a) declaring that Goings, Spears, and Major Mizell violated Mr. Jackson's rights and b) instructing Warden Bickham to take any and all measures necessary to remedy RCC's unconstitutional conditions of confinement.

## COUNT 2

### Eighth Amendment
### Deliberate indifference to a serious medical need
### Dr. Cleveland, in his individual and official capacities
### Warden Bickham, in his official capacity

62.     Mr. Jackson re-alleges each of the foregoing paragraphs as though stated fully below.

63.     The Eighth Amendment to the United States Constitution protects inmates like Mr. Jackson from cruel and unusual punishment.  The prohibition on cruel and unusual punishment includes a prohibition on the deliberate indifference to a serious medical need.

64.     Mr. Jackson suffers serious mental health conditions including anti-social disorder, bipolar disorder, depression, and anxiety.  RCC placed him on suicide watch even before his mother died on September 7, 2017, and medical records produced by RCC show that during the time period in question he begged repeatedly both to see a mental health professional and to receive Wellbutrin, the medication on which he had relied for years.

65.     Dr. Cleveland knew that Mr. Jackson's mental state was fragile.  He nevertheless withheld medical treatment, and specifically Wellbutrin, from Mr. Jackson to punish him.  The withholding of medical treatment exacerbated, and continues to exacerbate, Mr. Jackson's serious mental health conditions.

66.     Dr. Cleveland, a medical doctor, knew of and disregarded an excessive risk to Mr. Jackson's health and safety by withholding medical treatment for Mr. Jackson's serious mental health conditions.

67.     Separately, Dr. Cleveland, as RCC's medical director, was responsible for Mr. Jackson's medical treatment on July 24, 2017 when Mr. Jackson swallowed a razor blade.  Notwithstanding everyone's agreement on the date in question that Mr. Jackson swallowed a razor blade, Dr. Cleveland did not provide Mr. Jackson appropriate medical attention.  Mr. Jackson was instructed to simply wait and pass the razor blade.  He suffered pain and rectal bleeding for months before receiving appropriate medical attention.

68.     Mr. Jackson suffered harm, including mental and emotional distress, as a result of Dr. Cleveland's actions.

69.     Dr. Cleveland is individually liable for monetary damages that will compensate Mr. Jackson for the harm, including mental and emotional distress, that he suffered.

70.     In addition, Mr. Jackson seeks declaratory and injunctive relief against Warden Bickham in the form of a court order a) declaring that Dr. Cleveland violated Mr. Jackson's rights and b) instructing Warden Bickham and Dr. Cleveland to take any and all measures necessary to provide him the medical treatment he needs.

## COUNT 3

### Eighth Amendment
### Excessive use of force
### Goings, Spears, and Major Mizell, in their individual capacities
### Warden Bickham, in his official capacity

71.     Mr. Jackson re-alleges each of the foregoing paragraphs as though stated fully below.

72.     The Eighth Amendment to the United States Constitution protects inmates like Mr. Jackson from cruel and unusual punishment. The prohibition on cruel and unusual punishment includes a prohibition on the use of excessive force.

73.     On October 1, 2018, Goings and Spears beat Mr. Jackson so badly he had a black eye for days.

74.     Goings and Spears had no justification for their actions. They did not restrain Mr. Jackson in a good-faith effort to maintain or restore discipline. They beat Mr. Jackson because he put a piece of paper in his mouth.

75.     Goings and Spears acted maliciously because they had no just cause and sadistically because they inflicted pain on Mr. Jackson solely for their own amusement.

76.     At all relevant times, Major Mizell oversaw investigations at RCC and was responsible for investigating incidents involving Mr. Jackson. Either he did not bother to investigate, or he investigated but concealed his findings. Either way, he evinced deliberate or malicious indifference to the facts and provided cover for Goings and Spears that was a foreseeable contributing factor to the violations of Mr. Jackson's constitutional rights.

77.     Mr. Jackson suffered harm, including mental and emotional distress, as a result of Goings's, Spears's, and Major Mizell's actions.

78.     Goings, Spears, and Major Mizell are individually liable for monetary damages that will compensate Mr. Jackson for the harm, including mental and emotional distress, that he suffered.

79.     In addition, Mr. Jackson seeks declaratory and injunctive relief against Warden Bickham in the form of a court order a) declaring that Goings, Spears, and Major Mizell violated Mr. Jackson's rights and b) instructing Warden Bickham to take any and all measures necessary to protect against future violations.

## COUNT 4

### Retaliation for exercise of a constitutional right
### Goings, Spears, Major Mizell, and Dr. Cleveland, in their individual capacities
### Warden Bickham, in his official capacity

80.     Mr. Jackson re-alleges each of the foregoing paragraphs as though stated fully below.

81.     "Filing a grievance is a constitutionally protected activity." *Huff v. Thaler*, 518 F. App'x 311, 312 (5th Cir. 2013). "A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).

82.     As is his right, Mr. Jackson has filed several grievances against RCC, Spears, and Goings. These include his objections to his sentences for the July 17, 2017 and July 24, 2017 incidents, his complaint in this Court on November 22, 2017, and numerous pointed requests for healthcare, specifically for mental healthcare.

83.     Because he has filed his grievances, RCC, and specifically Goings, Spears, and Dr. Cleveland, have viewed and treated Mr. Jackson as a problem and have intentionally retaliated against him.

84.     Since he filed his lawsuit, RCC has subjected Mr. Jackson to retaliation in the form of isolation. In a letter addressed to the Court's clerk, docketed on July 16, 2018, Mr. Jackson represented that he was "being confined to a cell for 23 hours and 50 minutes a day only being allowed to exit the cell for shower."

85.     Goings and Spears have subjected Mr. Jackson to retaliation in the form of harassment and excessive use of force. On October 1, 2018, RCC officers Goings and Spears beat Mr. Jackson after he put a piece of paper in his mouth. The beating was so bad Mr. Jackson had a black eye for days.

86.     Dr. Cleveland has subjected Mr. Jackson to retaliation in the form of withholding from him medical treatment for his serious mental health condition.

87.     But for his exercise of his right to file his grievances, RCC, Goings, Spears, and Dr. Cleveland would not have subjected Mr. Jackson to these torments.

88.     At all relevant times, Major Mizell oversaw investigations at RCC and was responsible for investigating incidents involving Mr. Jackson. Either he did not bother to investigate, or he investigated but concealed his findings. Either way, he evinced deliberate or malicious indifference to the facts and provided cover for Goings and Spears that was a foreseeable contributing factor to the violations of Mr. Jackson's constitutional rights.

89.     Mr. Jackson has suffered harm, including mental and emotional distress, as a result of RCC's, Goings's, Spears's, Dr. Cleveland's, and Major Mizell's actions.

90.     Goings, Spears, Dr. Cleveland, and Major Mizell are individually liable for monetary damages that will compensate Mr. Jackson for the harm, including mental and emotional distress, that he has suffered.

91.     In addition, Mr. Jackson seeks declaratory and injunctive relief against Warden Bickham in the form of a court order a) declaring that RCC, Goings, Spears, Dr. Cleveland, and Major Mizell violated Mr. Jackson's rights and b) instructing Warden Bickham to take any and all measures necessary to protect against future violations.

## COUNT 5

**Americans with Disabilities Act and Rehabilitation Act
Discrimination on the basis of a disability
LA DPS&C and RCC**

92.     Mr. Jackson re-alleges each of the foregoing paragraphs as though stated fully below.

93.     Title II of the Americans with Disabilities Act ("ADA") provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be

denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act separately prohibits any "otherwise qualified individual with a disability in the United States" from being "excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination under any program or activity receiving Federal financial assistance," including any instrumentality of a local government. 29 U.S.C. § 794. Because of the two statutes' similarities, claims under both are treated as duplicative. For economy, Mr. Jackson refers simply to the ADA.

94.     A prison's failure to attend to the medical needs of a disabled inmate can violate the ADA. "The Supreme Court has held that prisons are public entities that may not exclude disabled individuals from participation in or deny them the benefits of their services, programs, or activities." *Cadena v. El Paso Cty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)). A prison "shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless [it] can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). "[F]ailure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners." *McCoy v. Texas Dep't of Criminal Justice*, No. 05-cv-370, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006).

95.     LA DPS&C oversees all state-run corrections facilities in Louisiana, including RCC. It bears ultimate responsibility for the health and safety of inmates in LA DPS&C's custody, including Mr. Jackson.

96.     LA DPS&C and RCC are public entities that on information and belief receive Federal financial assistance.

97.     Mr. Jackson suffers serious mental health conditions including anti-social disorder, bipolar disorder, depression, and anxiety. He is a qualified individual within the meaning of the ADA.

98.     LA DPS&C and RCC, through RCC's employees, have discriminated against Mr. Jackson on the basis of his serious mental health conditions, with the tragic result that they have punished him for, and aggravated, his disability.

99.     As shown herein, LA DPS&C and RCC, through RCC's employees, have subjected Mr. Jackson to, among other things, threats and provocations, knowing that Mr. Jackson's serious mental health conditions made him sensitive to them; isolation; harassment including the use of excessive force; and the withholding of medical treatment.

100.    Available medical records show that after the July 17, 2017 and July 24, 2017 incidents, which make obvious Mr. Jackson's mental frailty, Mr. Jackson begged repeatedly both to speak to a mental health professional and to be administered Wellbutrin, an anti-depressant on which he depended for years.

101.    Attending to Mr. Jackson's serious mental health needs would not have imposed an undue financial or administrative hardship on Mr. Jackson.

102.    But instead of attending to Mr. Jackson's serious mental health needs, LA DPS&C and RCC treated Mr. Jackson as a problem and intentionally retaliated against him. LA DPS&C's and RCC's intent, at a minimum their deliberate indifference, can and ought to be inferred.

103.    LA DPS&C and RCC are liable for any and all damages Mr. Jackson has suffered because of their discrimination against him.

104.    In addition, Mr. Jackson seeks declaratory and injunctive relief against LA DPS&C and RCC in the form of a court order a) declarating that LA DPS&C and RCC violated Mr. Jackson's rights and b) instructing LA DPS&C and RCC to take any and all measures necessary to cease their

discrimination against Mr. Jackson and to protect against future discrimination against Mr. Jackson and similarly situated inmates.

## COUNT 6

### Fourteenth Amendment
### Discrimination
### Goings, Spears, Major Mizell, and Dr. Cleveland, in their individual capacities
### Warden Bickham, in his official capacity

105.    Mr. Jackson re-alleges each of the foregoing paragraphs as though stated fully below.

106.    The Fourteenth Amendment's equal protection clause prohibits prisons from treating prisoners unfairly compared to other prisoners without adequate justification. *Hilliard v. Bd. of Pardons & Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985) ("This is an equal protection claim because it alleges that, without adequate justification, he was treated unfairly compared to other prisoners who were similarly situated. When this occurs, equal protection may be violated even though the differential treatment does not relate to a substantive constitutional right.") (citations omitted).

107.    Both because he has a serious mental health condition and because he has filed his grievances, RCC, and specifically Goings, Spears, and Dr. Cleveland, have treated Mr. Jackson unfairly compared to other prisoners, without adequate justification.

108.    Among other things, RCC has unfairly subjected Mr. Jackson to isolation; Goings and Spears have unfairly subjected Mr. Jackson to threats and provocations, knowing that Mr. Jackson's serious mental health conditions made him sensitive to them, and to harassment including the use of excessive force; and Dr. Cleveland has unfairly withheld from Mr. Jackson medical treatment for his serious mental health conditions.

109.    Mr. Jackson's serious mental health conditions was both objectively obvious and subjectively known by Goings, Spears, and Dr. Cleveland.  Goings, Spears, and Dr. Cleveland did not

merely disregard Mr. Jackson's serious mental health condition, they aggravated it maliciously, having no just cause, and sadistically, inflicting pain for their own amusement.

110.    At all relevant times, Major Mizell oversaw investigations at RCC and was responsible for investigating incidents involving Mr. Jackson. Either he did not bother to investigate, or he investigated but concealed his findings.  Either way, he evinced deliberate or malicious indifference to the facts and provided cover for Goings and Spears that was a foreseeable contributing factor to the violations of Mr. Jackson's constitutional rights.

111.    Mr. Jackson has suffered harm, including mental and emotional distress, as a result of RCC's, Goings's, Spears's, Dr. Cleveland's, and Major Mizell's actions.

112.    Goings, Spears, Dr. Cleveland, and Major Mizell are individually liable for monetary damages that will compensate Mr. Jackson for the harm, including mental and emotional distress, that he has suffered.

113.    In addition, Mr. Jackson seeks declaratory and injunctive relief against Warden Bickham in the form of a court order a) declaring that RCC, Goings, Spears, Dr. Cleveland, and Major Mizell violated Mr. Jackson's rights and b) instructing Warden Bickham to take any and all measures necessary to protect against future violations.

## COUNT 7

### Supervisory liability
### Warden Tanner, in his individual capacity

114.    Mr. Jackson re-alleges each of the foregoing paragraphs as though stated fully below.

115.    A supervisor may be held liable for the acts of his employees if he failed to train or supervise them.

116.    At all relevant times, Warden Robert Tanner oversaw RCC's operations and was responsible for the health and safety of inmates at RCC, including Mr. Jackson, and for the conditions

of their confinement.  As RCC's chief supervisor, Warden Tanner had a duty to train and supervise RCC's employees.

117.     Warden Tanner failed to train Goings, Spears, and Dr. Cleveland on how to deal with inmates with serious mental health conditions.

118.     Warden Tanner failed to train Goings, Spears, and Dr. Cleveland on their obligations under the ADA.

119.     Warden Tanner failed to train Major Mizell on his duties to investigate incidents at RCC, including the July 17, 2017 and July 24, 2017 incidents involving Mr. Jackson.

120.     Warden Tanner failed to supervise Goings's, Spears's, and Dr. Cleveland's interactions with Mr. Jackson, with the tragic result that they have been permitted to punish Mr. Jackson for, and aggravate, his disability.

121.     Warden Tanner's failures to train and supervise Goings, Spears, Dr. Cleveland, and Major Mizell constituted deliberate indifference: On information and belief, discovery will show a pattern of similar constitutional violations by Goings, Spears, Dr. Cleveland, Major Mizell, and other RCC officers, such that Warden Tanner had actual or constructive notice that his failure to train and supervise caused his employees to violate inmates' constitutional rights.

122.     Warden Tanner's failure to train and supervise Goings, Spears, Dr. Cleveland, and Major Mizell was both a tacit approval of, or acquiescence in, their conduct and a repudiation of the rights and dignity of Mr. Jackson.  Because Warden Tanner allowed Goings, Spears, Dr. Cleveland, and Major Mizell to act with impunity, Warden Tanner himself was a moving force behind their constitutional violations.

123.     Warden Tanner is individually liable for monetary damages that will compensate Mr. Jackson for the harm, including mental and emotional distress, that he has suffered.

**Attorney's fees**

124.     Mr. Jackson respectfully requests any reasonable attorney's fees and costs to which

he is entitled under 42 U.S.C. § 1988.

—————————————

WHEREFORE, Mr. Jackson respectfully requests that, after due proceedings, the Court enter

judgments:

1.  declaring that his federal constitutional and civil rights have been violated;

2.  awarding him any and all damages to which he is entitled for violations of his federal

    constitutional and civil rights;

3.  providing injunctive relief as necessary to protect against future violations of his federal

    constitutional and civil rights;

4.  awarding him any and all attorney's fees and costs to which he is entitled; and

5.  awarding any and all other relief as may be just and equitable.

February 16, 2021

Respectfully submitted,

*/s/ Alysson Mills*
Alysson Mills
Mills & Amond LLP
650 Poydras Street, Suite 1525
New Orleans, Louisiana 70130
t/f: 504-586-5253
amills@millsamond.com

*Court-appointed counsel for Brandon Jackson*

CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

I further certify that I mailed the foregoing document by first-class mail to:

Brandon Jackson, #451010
Rayburn Correctional Center
Sleet Unit R-4 #1
27268 Highway 21 N
Angie, Louisiana 70426

February 16, 2021                          */s/ Alysson Mills*
                                           Alysson Mills